# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| FAIR HOUSING RIGHTS CENTER IN | : | |
| SOUTHEASTERN PENNSYLVANIA, | : | |
| | : | CIVIL ACTION |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | NO.  14-4441 |
| POST GOLDTEX GP, LLC | : | |
| POST GOLDTEX, L.P. | : | |
| KLINGSTUBBINS, LLP | : | |
| KLINGSTUBBINS, INC., | : | |
| | : | |
| Defendants. | : | |

## MEMORANDUM

BUCKWALTER, S. J.                                                                January 14, 2015

Currently pending before the Court are the Motions by Defendants Post Goldtex GP,

LLC; Post Goldtex, L.P.; Klingstubbins, LLP; and Klingstubbins, Inc.  (collectively,

"Defendants") to Dismiss Plaintiff Fair Housing Rights Center in Southeastern Pennsylvania

("Plaintiff")'s Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6), as well as

Defendants' Motions for Sanctions pursuant to Federal Rule of Civil Procedure 11.  For the

following reasons, the Motions to Dismiss are granted and the Motions for Sanctions are denied.

## I.       FACTUAL BACKGROUND

Plaintiff is a non-profit corporation located in Philadelphia, Pennsylvania that provides

counseling, referrals, advocacy, and complaint resolution to people who believe they have been

illegally denied housing or treated in a discriminatory manner; investigates claims of

discrimination and monitors discriminatory housing practices and trends in the region; offers

education workshops and materials on fair housing rights and responsibilities; and receives

grants and contracts from the United States Department of Housing and Urban Development pursuant to 42 U.S.C. § 3616a to carry out programs to investigate and monitor discriminatory housing practices and activities and to participate in enforcement activities.  (Compl. ¶ 10.) Defendants Post Goldtex GP, LLC and Post Goldtex, L.P. have offices in Philadelphia, Pennsylvania and developed, constructed, and own the Goldtex Apartments.  (Id. at ¶ 11.) Defendants Klingstubbins, LLP and KlingStubbins, Inc. also have offices in Philadelphia, Pennsylvania and designed the Goldtex Apartments.  (Id. at ¶ 12.)

    The Goldtex Apartments are located in the Goldtex Building at 315-323 North 12th Street in Philadelphia, Pennsylvania.  (Id. at ¶ 13.)  When the Goldtex Building was originally constructed in 1912, it was approximately 144 feet wide and 1,145 feet long, consisted of ten floors plus a basement, and had three elevators.  (Id. at ¶¶ 14–15.)  At that time it was known as the Smaltz Building, and was renamed the Goldtex Building in or around 1991.  (Id. at ¶ 16.) When it was built in 1912, the Smaltz Building was constructed for and used as a factory.  (Id. at ¶ 17.)  Between 1912 and approximately the mid-1990s, the Smaltz/Goldtex Building was leased solely to manufacturers and wholesale and commercial businesses.  (Id. at ¶ 19.)  The Goldtex Building fell steadily into disuse and disrepair, and was unused, abandoned, and shuttered by the late 1990s.  (Id. at ¶ 20.)

    On October 7, 2010, Defendant Post Goldtex, L.P. purchased the Goldtex Building for $4.5 million, and subsequently both Goldtex Defendants hired the Klingstubbins Defendants as the architects to design the conversion of the entire building into rental apartments with retail space on the ground level.  (Id. at ¶¶ 23–24.)  Based on the Klingstubbins Defendants' design, the Goldtex  Defendants gutted the interior of the Goldtex Building by removing most interior walls and all windows, but retaining the floors, and also completely clad the exterior of the

building with new materials.  (<u>Id.</u> at ¶¶ 25, 27.)  The Klingstubbins Defendants converted the Goldtex Building from space designed for manufacturers or wholesale or commercial businesses to residential dwellings.  (<u>Id.</u> at ¶ 26.)  Based on the Klingstubbins Design, the Goldtex Defendants constructed 163 rental apartments in the Goldtex Building.  (<u>Id.</u> at ¶ 30.)  The Goldtex Building opened for residential use in 2013.  (<u>Id.</u> at ¶ 31.)  Prior to what Plaintiff describes as Defendants' complete reconstructions and repurposing of the Goldtex Building as apartments, the Goldtex Building had never been 1) designed or constructed for residential purposes; 2) used as dwellings as defined in the Fair Housing Act ("FHA"), 42 U.S.C. § 3602(b); 3) sold to residential owners or leased to residential tenants; or 4) designed or constructed as covered multifamily dwellings as defined by the FHA, 42 U.S.C. § 3604(f)(7).  (<u>Id.</u> at ¶ 32.)

In March 2014, Plaintiff conducted a comprehensive site visit at the Goldtex Apartments, surveying the completed common areas and three units of different sizes and layouts.  (<u>Id.</u> at ¶ 35.)  That survey identified multiple violations of FHA design and construction standards, including but not limited to the following:

> a) The main building entrance door is too heavy and there is no automatic door opener;
> b) Some dwelling units have entry doors less than 32 inches, which do not allow passage by persons who use wheelchairs;
> c) Some dwelling units have entry units where the threshold from the interior to the hallway exceeds ¾ of an inch, impeding passage by persons who use wheelchairs;
> d) Some dwelling units have interior doors, including bathroom and/or bedroom doors, which are less than 32 inches wide, precluding passage by persons who use wheelchairs and eliminating accessible routes through those dwellings;
> e) Some dwelling units have passageways that are less than 36 inches wide, eliminating routes within those dwellings;
> f) Some dwelling units have bathrooms that are not useable by persons who use wheelchairs because the toilet location was inaccessible;
> g) Some dwelling units have kitchen counters that are too high for them to be useable by persons who use wheelchairs;

3

  h) Some dwelling units have switches, outlets, and thermostats in
    locations that are inaccessible;
  i) In the common areas, some mailboxes were too high for them
    to be useable by persons who use wheelchairs.

(Id. at ¶ 36.)  Plaintiff sent a letter to Defendant's representatives on April 11, 2014, detailing the

alleged violations of the FHA's design and construction requirements and asking that they

remedy those violations.  (Id. at ¶ 37.)  The Goldtex Defendants advised Plaintiff that the

Goldtex Building was not subject to those requirements.  (Id.)

   Plaintiff alleges that it has been directly and substantially injured as a result of

Defendants' actions and omissions, because it has had to invest resources to investigate

Defendants' alleged violations of the FHA, diverting its resources from other activities it could

have undertaken; and because its mission to eradicate housing discrimination and assure equal

access to housing for all people, including people with disabilities, has been frustrated.  (Id. at ¶

38.)  Specifically, Plaintiff alleges that the residential apartment units, or dwelling units, in the

Goldtex Apartments are "covered multifamily dwellings" as defined by the FHA, that all of the

dwelling units were built for first occupancy after March 13, 1991, and that the units and the

common-use areas in the building are therefore subject to the FHA's design and construction

requirements as set forth in 42 U.S.C. § 3604(f)(3).  (Compl. ¶ 44–45 (citing 42 U.S.C. §§

3604(f)(7)(A), 3604(f)(3)).)  Plaintiff alleges further that Defendants, together and separately,

violated the FHA's design and construction requirements under 42 U.S.C. § 3604(f)(3) by failing

to design and construct the Goldtex Apartments in compliance with the standards set forth in 42

U.S.C. § 3604(f)(3)(C) so that:

  a) The public use and common portions of the building are readily
    accessible to and usable by individuals who use wheelchairs;
  b) The entry door to the building and all doors within each
    dwelling unit allow passage by persons who use wheelchairs;

    c) There are accessible routes within each dwelling unit usable by
       persons who use wheelchairs;

    d) All dwelling units have bathrooms and kitchens that are usable
       by persons who use wheelchairs; and

    e) All dwelling units have light switches, outlets, thermostats, and
       other environmental controls in locations accessible to persons
       who use wheelchairs.

(Compl. ¶ 46.)  Plaintiff alleges that Defendants' failure to comply with the FHA's design and construction requirements 1) discriminate against individuals with disabilities or otherwise make unavailable or deny dwellings to persons with disabilities in violation of 42 U.S.C. § 3604(f)(1), and 2) discriminate against individuals with disabilities in the terms, conditions, or privileges of rental of dwellings, or in the provision of services or facilities in connection with the rental of dwellings in violation of 42 U.S.C. § 3604(f)(2).  (Compl. ¶¶ 47–48.)

      Plaintiff requests 1) a declaratory judgment that Defendants' actions and omissions violate the FHA; 2) a permanent injunction enjoining Defendants to bring the covered multifamily dwelling units and the public use and common spaces at the Goldtex Apartments into compliance with the FHA's design and construction requirements and to assure that all future designs and constructions of covered multifamily dwellings comply with the FHA; 3) award monetary damages to fully compensate Plaintiff for its injuries incurred as a result of Defendants' conduct; and 4) award attorney's fees and costs pursuant to 42 U.S.C. § 3613(c)(2). (Compl. ¶ 49.)

      Plaintiff initiated the present litigation on July 25, 2014, alleging that Defendants violated the Fair Housing Act's design and construction requirements by failing to design and construct the Goldtex Apartments in compliance with FHA standards, thereby discriminating against individuals with disabilities or otherwise making unavailable or denying dwellings to persons with disabilities.  (Compl. ¶¶ 46–47.)  The Post Goldtex Defendants filed a Motion to Dismiss on

September 12, 2014, as well as a subsequent Motion for Sanctions on September 17, 2014.  The

Klingstubbins Defendants filed a Motion to Dismiss and for Sanctions on September 15, 2014.

Plaintiff filed a Response on September 24, 2014.  The Post Goldtex Defendants submitted a

Reply on September 30, 2014, and the Klingstubbins Defendants submitted a Reply on October

3, 2014.  Plaintiff submitted its Sur-Reply on October 10, 2014.  The Motions to Dismiss and the

Motions for Sanctions are now ripe for judicial consideration.

## II.    STANDARD OF REVIEW

Under Rule 12(b)(6), a defendant bears the burden of demonstrating that the plaintiff has

not stated a claim upon which relief can be granted.  Fed. R. Civ. P. 12(b)(6); see also Hedges v.

United States, 404 F.3d 744, 750 (3d Cir. 2005).  In Bell Atlantic Corp. v. Twombly, 550 U.S.

544 (2007), the United States Supreme Court recognized that "a plaintiff's obligation to provide

the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a

formulaic recitation of the elements of a cause of action will not do."  Id. at 555.  Following

these basic dictates, the Supreme Court, in Ashcroft v. Iqbal, 556 U.S. 662 (2009), subsequently

defined a two-pronged approach to a court's review of a motion to dismiss.  "First, the tenet that

a court must accept as true all of the allegations contained in a complaint is inapplicable to legal

conclusions.  Threadbare recitals of the elements of a cause of action, supported by mere

conclusory statements, do not suffice."  Id. at 678.  Thus, although "Rule 8 marks a notable and

generous departure from the hyper-technical, code-pleading regime of a prior era . . . it does not

unlock the doors of discovery for a plaintiff armed with nothing more than conclusions."  Id. at

678–79.

Second, the Supreme Court emphasized that "only a complaint that states a plausible

claim for relief survives a motion to dismiss."  Id. at 679. "Determining whether a complaint

states a plausible claim for relief will, as the Court of Appeals observed, be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id. A complaint does not show an entitlement to relief when the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct. Id.; see also Phillips v. Cnty. of Allegheny, 515 F.3d 224, 232–34 (3d Cir. 2008) (holding that: (1) factual allegations of complaint must provide notice to defendant; (2) complaint must allege facts suggestive of the proscribed conduct; and (3) the complaint's "'factual allegations must be enough to raise a right to relief above the speculative level.'" (quoting Twombly, 550 U.S. at 555)).

Notwithstanding these new dictates, the basic tenets of the Rule 12(b)(6) standard of review have remained static. Spence v. Brownsville Area Sch. Dist., No. Civ.A.08-626, 2008 WL 2779079, at *2 (W.D. Pa. July 15, 2008).  The general rules of pleading still require only a short and plain statement of the claim showing that the pleader is entitled to relief and need not contain detailed factual allegations. Phillips, 515 F.3d at 233.  Further, the court must "accept all factual allegations in the complaint as true and view them in the light most favorable to the plaintiff." Buck v. Hampton Twp. Sch. Dist., 452 F.3d 256, 260 (3d Cir. 2006).  Finally, the court must "determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." Pinkerton v. Roche Holdings Ltd., 292 F.3d 361, 374 n.7 (3d Cir. 2002).

## III.    DISCUSSION

Defendants move to dismiss Plaintiff's Complaint in its entirety due to a lack of foundation under Rule 12(b)(6), and also move for sanctions against Plaintiff pursuant to Rule 11.  Having considered the Complaint and the parties' briefs, the Court finds that Plaintiff's claim fails as a matter of law and will grant Defendants' Motions to Dismiss, but deny Defendants' Motions for Sanctions.

**A.  <u>Violation of the Fair Housing Act</u>**[1]

The Post Goldtex Defendants argue that the Goldtex Apartments are not subject to the

FHA's design and construction accessibility requirements because those requirements apply only

to multifamily housing projects built for first occupancy after March 13, 1991, and the Goldtex

Building was built for first occupancy in 1912.  (Post Goldtex Defs.' Mem. Supp. Mot. Dismiss

3.)  The Klingstubbins Defendants argue that the facts alleged in Plaintiff's Complaint establish

that the FHA does not apply to the Goldtex Apartments.  (Klingstubbins Defs.' Mem. Supp. Mot.

Dismiss and for Sanctions 1.)  All Defendants rely on regulations and guidance promulgated by

the United States Department of Housing and Urban Development ("HUD") to support their

contention that the Goldtex Apartments are not subject to the FHA's design and construction

accessibility requirements.  Plaintiff argues that the language in § 3604(f)(3)(C) is unambiguous

and requires Defendants to comply with the design and construction accessibility requirements,

and that the agency interpretations Defendants rely on contravene the plain language of the FHA

and are therefore invalid.  (Pl.'s Resp. Opp'n Mots. Dismiss 2–3.)

The United States Supreme Court established a framework for judicial review in these

circumstances:

> When a court reviews an agency's construction of the statute
> which it administers, it is confronted with two questions.  First,
> always, is the question whether Congress has directly spoken to the
> precise question at issue.  If the intent of Congress is clear, that is
> the end of the matter; for the court, as well as the agency, must
> give effect to the unambiguously expressed intent of Congress.  If,
> however, the court determines Congress has not directly addressed
> the precise question at issue, the court does not simply impose its
> own construction on the statute, as would be necessary in the
> absence of an administrative interpretation.  Rather, if the statute is

---

[1] Plaintiff alleges that it is an aggrieved person under 42 U.S.C. § 3613(a)(1) and that the residential apartment units in the Goldtex Apartments are "dwellings" as defined in the FHA. (Compl. ¶ 40, 43 (citing 42 U.S.C. § 3602(b)).)

> silent or ambiguous with respect to the specific issue, the question for the court is whether the agency's answer is based on a permissible construction of the statute.

Chevron, U.S.A., Inc. v. Natural Res. Def. Council, Inc., 467 U.S. 837, 842-43 (1984).

In this case, the question is whether Congress, in drafting 42 U.S.C. § 3604(f)(3)(C), addressed whether the renovation of an existing commercial building—constructed prior to the effective date of the design accessibility requirements, but converted into a residential apartment building to be occupied after the effective date of the design accessibility requirements—is subject to those requirements.  If it did not, the question then becomes whether HUD's regulations and agency guidance interpreting the FHA are based on permissible constructions of the FHA and are therefore entitled to deference from this Court.

### 1.  **Statutory Language**

The FHA's design and construction accessibility requirements apply to "the design and construction of covered multifamily dwellings for first occupancy after the date that is 30 months after September 13, 1988 [hereinafter March 13, 1991]."[2]  42 U.S.C. § 3604(f)(3)(C).  Under the Act, "'[d]welling' means any building, structure, or portion thereof which is occupied as, or designed or intended for occupancy as, a residence by one or more families, and any vacant land which is offered for sale or lease for the construction or location thereon of any such building, structure, or portion thereof."  42 U.S.C. § 3602.

When tasked with statutory interpretation, courts are to give effect to "the broad remedial intent of Congress embodied in the Act."  Havens Realty Corp. v. Coleman, 455 U.S. 363, 380 (1982).  Courts must "assume that 'Congress expresses its intent through the ordinary meaning of its language' and therefore [should] begin 'with an examination of the plain language of the

---

[2] The Code of Federal Regulations states that the requirements apply to "covered multifamily dwellings for first occupancy after March 13, 1991."  24 C.F.R. § 100.205.

statute.'"  <u>Disabled in Action of Pa. v. Se. Pa. Transp. Auth.</u>, 539 F.3d 199, 210 (3d Cir. 2008)

(quoting <u>Rosenberg v. XM Ventures</u>, 274 F.3d 137, 141 (3d Cir. 2001)).  "If the language is

unambiguous, [the] inquiry is at an end."  <u>Id.</u>  "A statutory provision is not ambiguous simply

because 'by itself, [it is] susceptible to differing constructions' because in addition to the

'statutory language . . . itself,' [courts must] take account of 'the specific context in which that

language is used, and the broader context of the statute as a whole.'"  <u>Id.</u> (quoting <u>In re Price</u>,

370 F.3d 362, 369 (3d Cir. 2004)).[3]

      Defendants argue that, under the FHA's plain language and implementing regulations,

the design and construction accessibility requirements do not apply to buildings that were used

for any purpose before March 13, 1991, and that "first occupancy" does not mean first residential

occupancy.  (<u>See</u> Post Goldtex Defs.' Mem. Supp. Mot. Dismiss 6; Klingstubbins Defs.' Mem.

Supp. Mot. Dismiss and For Sanctions 3–4.)  Plaintiff argues that "Defendants' argument

contravenes the unambiguous statutory language, under which the relevant question is when the

covered multifamily **dwellings** were first occupied, and not when any **non-residential structure**

in which those dwellings were installed was first occupied."  (Pl.'s Resp. Opp'n Mots. Dismiss 2

(emphasis in original).)  According to Plaintiff, therefore, the Goldtex Apartments are not

exempt from compliance with the relevant FHA provisions, because "[w]hile the implementing

regulations support Defendants' assertion, the 'plain language of the FHA' most certainly does

not."  (<u>Id.</u> at 11, 13.)

---

[3] As Plaintiff points out, the Third Circuit Court of Appeals has stated that "legislative history should not be considered at <u>Chevron</u> step one."  <u>United States v. Geiser</u>, 527 F.3d 288, 292 (3d Cir. 2008).  By contrast, "[s]tatutory structure is properly considered under <u>Chevron</u> step one." <u>United States v. Geiser</u>, 527 F.3d 288, 298 (3d Cir. 2008)

A plain reading of § 3604(f)(3)(C) does not reveal an expression of Congress' intent regarding that subsection's applicability to pre-1991 structures which are later converted to residential use.[4]  The language at issue here states that the FHA's design and construction accessibility provisions apply to "the design and construction of covered multifamily dwellings for first occupancy" after March 13, 1991.  It does not address the precise question of whether § 3604(f)(3)(C) applies to the post-1991 conversion of a pre-1991 commercial structure to a residential structure.  It does not state whether "construction" means new construction or whether its meaning encompasses renovations or conversions of a building from commercial use to residential use.[5]  Similarly, it does not state whether "first occupancy" means first occupancy for

---

[4] Very few courts have addressed this issue.  While its opinion is not binding on this Court, one district court found that a proposed reading of § 3604(f)(3)(C) similar to the one urged by Plaintiff was inconsistent with a plain reading of the FHA.  See Reyes v. Fairfield Props., 661 F. Supp. 2d 249, 262–63 (E.D.N.Y. 2009) (stating that "[t]he Court's own research has yielded no case suggesting that a failure to renovate or reconstruct a pre-1991 facility in accordance with § 3604(f)(3)(C) constitutes grounds for liability under that subsection.") (citing Sporn v. Ocean Colony Condo. Ass'n, 173 F. Supp. 2d 244, 249 (D.N.J. 2001) (stating that "[e]ven assuming that the subsection's requirements relating to the design and construction of 'covered multifamily dwellings for first occupancy' apply to renovations such as those alleged here (a proposition for which Plaintiffs cite no legal authority)," the plaintiffs' evidence was "wholly insufficient" to withstand summary judgment)).  The Reyes court found that "such an interpretation of section 3604(f)(3)(C) is inconsistent with the plain language of the statute" and held that "section 3604(f)(3)(C) is not made applicable by renovations undertaken in an older building that take place after March 1991."  Id.  Plaintiff is correct that the facts of Reyes are distinct from those in this case, but the Reyes court's reasoning is nonetheless informative.

[5] Plaintiff argues that "[u]nder the statutory language, what is relevant is the 'design and construction of covered multifamily dwellings'—not the design and construction of a structure in which the dwellings were constructed."  (Pl.'s Resp. Opp'n Mot. Dismiss 21.)  Viewing the "dwelling" in this case as the individual apartments, rather than the building itself, however, does not resolve the question of whether "construction" means entirely new construction or whether its meaning includes the renovations needed to convert a commercial space, where some structural elements of the original building interior were retained, to a residential one.

any purpose, either commercial or residential, or whether it means first residential occupancy.[6] Because "the statute is silent or ambiguous with respect to the specific issue, the question for the court is whether the agency's answer is based on a permissible construction of the statute." Chevron, 467 U.S. at 842–43.  Accordingly, the Court will proceed to the second step of Chevron analysis and consider whether HUD's construction of the statute is reasonable.

### 2.  **Agency Interpretation**

For purposes of the FHA's discrimination provisions, "[f]irst occupancy means a building that has never before been used for any purpose."  24 C.F.R. § 100.201.  "Building" is defined as "a structure, facility or portion thereof that contains or serves one or more dwelling units."  Id. The FHA's implementing regulations' definition of "dwelling" includes "an apartment unit within an apartment building."  Id.

As stated above, courts should "ordinarily defer to an administering agency's reasonable interpretation of a statute."  Meyer v. Holley, 537 U.S. 280, 287–88 (2003) (deferring to specifications of when certain rules apply by "the Department of Housing and Urban Development (HUD), the federal agency primarily charged with the implementation and administration of [FHA]") (citing Chevron, 467 U.S. at 842–845; Skidmore v. Swift & Co., 323

---

[6] Plaintiff argues that "[t]he words 'for first occupancy' directly modify 'covered multifamily dwellings' further evidencing that Congress intended that the relevant first occupancy date is the first occupancy date of the covered multifamily dwellings, and not any structure in which those dwellings were constructed."  (Pl.'s Resp. Opp'n Mots. Dismiss 21.)  As written, however, the statutory provision also requires "design and construction of" to be read together with "covered multifamily dwellings" and "for first occupancy."

Plaintiff correctly states that 42 U.S.C. § 3604(f)(3)(C) "makes no mention at all of non-residential structures" (id.), yet is nonetheless seeking to apply § 3604(f)(3)(C) to apartments in a building that was converted from a non-residential structure.  Thus, the absence of a direct reference to how § 3604(f)(3)(C) applies to conversions of non-residential structures to residential structures is not evidence of unambiguous statutory text, but rather demonstrates that Congress has not directly addressed the precise question at issue and that the plain language of the statute is ambiguous.  See Chevron, 467 U.S. at 842–43.

U.S. 134, 140 (1944)).  "[I]f the statute speaks clearly 'to the precise question at issue,' [courts] 'must give effect to the unambiguously expressed intent of Congress.'"  <u>Barnhart v. Walton</u>, 535 U.S. 212, 217–18 (2002) (quoting <u>Chevron</u>, 467 U.S. at 842–843).  "If, however, the statute 'is silent or ambiguous with respect to the specific issue,' [courts] must sustain the Agency's interpretation if it is 'based on a permissible construction' of the Act."  <u>Id.</u> at 218 (quoting <u>Chevron</u>, 467 U.S. at 843).  The reviewing court must decide "(1) whether the statute unambiguously forbids the Agency's interpretation, and, if not, (2) whether the interpretation, for other reasons, exceeds the bounds of the permissible."  <u>Id.</u> (internal citations omitted).

Plaintiff argues that "Defendants' reliance on regulatory interpretations are unavailing since those interpretations contravene the plain language of the FHA."  (Pl.'s Resp. Opp'n Mots. Dismiss 2–3.)  However, as discussed above, § 3604(f)(3)(C) does not specifically address whether the design and construction accessibility requirements apply to a pre-1991 commercial building which has been renovated in order to become a post-1991 residential building.  Under <u>Chevron</u>, this Court must, therefore, take into consideration and give deference to HUD's regulatory interpretations and the FHA's implementing regulations, which Plaintiff conceded support Defendants' assertion.[7]  (<u>See</u> Pl's Resp. Opp'n to Mots. Dismiss 13 ("While the

---

[7] Plaintiff also argues that other HUD regulations are inconsistent with those quoted above and therefore undermine Defendants' reliance on HUD's regulatory interpretations, citing 24 C.F.R. § 100.205(a) as linking the first occupancy requirement to the time the "dwelling" was designed and constructed, as opposed to the "structure" containing a dwelling, and 59 Fed. Reg. at 33,364–33,365 for HUD's guidance on appropriate evidence of residential use prior to the effective date.  (Pl.'s Resp. Opp'n Mots. Dismiss 26–28 (citing <u>Wilcox v. Ives</u>, 864 F.2d 915, 922, 924–25 (1st Cir. 1988) (declining to give deference to agency interpretations).)  First, it should be noted that First Circuit cases are not binding on this Court, and that the Second and Ninth Circuits disagreed with that decision.  <u>See</u> <u>Luyando v. Grinker</u>, 8 F.3d 948, 950 (2d Cir. 1993) (disagreeing with the First Circuit's "contrary conclusion that the language was unambiguous"); <u>Vanscoter v. Sullivan</u>, 920 F.2d 1441, 1447 (9th Cir. 1990) (finding that the First Circuit's "appraisal is excessively harsh" with respect to the secretary of an agency's interpretations in light of ambiguous statutory text and its amendments).  Second, the regulatory provision cited by Plaintiff is very general, whereas the regulatory provisions and agency

implementing regulations support Defendants' assertion . . . .").) As the language of Section 3604(f0(3)(C) does not "unambiguously forbid" HUD's interpretation, and as HUD's interpretation does not exceed "the bounds of the permissible," Barnhart, 535 U.S. at 217–18, HUD's interpretations are reasonable and must be given deference. Thus, because HUD has interpreted "first occupancy" as meaning occupancy for any purpose, the Goldtex Apartments are not subject to the FHA's design and construction accessibility requirements because they were not designed and constructed for first occupancy after March 13, 1991.[8]

In further support of their Motions to Dismiss, Defendants rely on HUD's responses to comments received on the proposed implementing regulations now found at 24 C.F.R. Chapter 1, in particular the following comment and response:

### Conflict with Historic Preservation Design Codes

> Comment. Two commenters expressed concern about a possible conflict between the Act's accessibility requirements and local historic preservation codes (including compatible design requirements). The commenters stated that their particular concerns are: (1) **The conversion of warehouse and commercial space to dwelling units**; and (2) new housing construction on vacant lots in historically designated neighborhoods.

> Response. **Existing facilities that are converted to dwelling units are not subject to the Act's accessibility requirements**. Additionally, alteration, rehabilitation or repair of covered multifamily dwellings are not subject to the Act's accessibility

---

guidance relied on by Defendants are more specific and, most importantly, address the factual circumstances at issue here. Accordingly, the Court will not decline to give deference to HUD's regulations and interpretations on this ground.

[8] Plaintiff argues that "[t]he Goldtex Apartments are not a retrofit of previously existing housing, but rather completely new construction," due to "Defendants' complete redesign, reconstruction, and repurposing of the Goldtex Building," which had not previously been used for residential purposes. (Id. at 9–10, 12.) While the renovations required to complete the Goldtex Apartments were extensive, they did not constitute "completely new construction" as some interior walls, the floors, and the exterior walls of the building remained intact. (See Compl. at ¶¶ 25, 27.)

> requirements. The Act's accessibility requirements only apply to
> new construction. With respect to new construction in
> neighborhoods subject to historic codes, the Department believes
> that the Act's accessibility requirements should not conflict with,
> or preclude building designs compatible with historic preservation
> codes.

Final Fair Housing Accessibility Guidelines, 56 FR 9472-01 (emphasis added).  This type of

agency guidance is also persuasive and, while it might not receive the same degree of deference

afforded to regulatory interpretations, the Court may nonetheless give deference to HUD's

determination that § 3604(f)(3)(C) does not encompass the Goldtex Apartments because it was

an existing commercial facility that was converted to dwelling units.  See Barnhart, 535 U.S. at

221 (stating that "the fact that [an] Agency previously reached its interpretation through means

less formal than 'notice and comment' rulemaking, see 5 U.S.C. § 553, does not automatically

deprive that interpretation of the judicial deference otherwise its due.") (citing Chevron, 467 U.S.

at 843); United States v. Mead Corp., 533 U.S. 218, 230-31 (2001) (noting that "as significant as

notice-and-comment is in pointing to Chevron authority, the want of that procedure here does not

decide the case, for we have sometimes found reasons for Chevron deference even when no such

administrative formality was required and none was afforded.") (internal citations omitted).

Defendants also point to a Joint Statement from the United States Department of Justice

and HUD as a persuasive policy statement, which, though not binding, supports their argument:

> 16.    Do the Fair Housing Act's design and construction
> requirements apply to the alteration or renovation of nonresidential
> buildings into residential buildings?
>
> No. First occupancy means a "building that has never before been
> used for any purpose."   The conversion of a nonresidential
> building into a residential building through alteration or renovation
> does not cause the building to become a covered multifamily
> dwelling.  This is true even if the original nonresidential building
> was built after March 13, 1991.   This situation needs to be
> distinguished, however, from additions of covered multifamily

> dwellings (see questions 12, 13 and 14, above). <u>See</u> 24 C.F.R. §
> 100.201; Questions and Answers, Q. 4, 8 and 9, 59 Fed. Reg. at
> 33,364-65.
>
> Example: A warehouse built in 1994 is being rehabilitated into a
> small condominium residential building with two stories and a
> total of 12 dwelling units. This conversion of this building is not
> covered because at the time of its first occupancy it was not
> designed and constructed as a covered multifamily dwelling.

(Klingstubbins Defs. Mot. Dismiss, Ex. C: HUD and DOJ, Joint Statement on Accessibility
(Design and Construction Requirements for Covered Multifamily Dwellings Under the Fair
Housing Act at 10 (Apr. 30, 2012).)

HUD, in both interpretive regulations and in other persuasive guidance, has consistently
taken the position that the design and construction accessibility requirements do not apply to
buildings such as the Goldtex Apartments because it is a pre-1991 commercial structure that was
later converted to residential apartments.  Under <u>Chevron</u> step two, this Court must defer to
HUD's reasonable interpretations.  Accordingly, Plaintiff's claim fails as a matter of law and
Defendants' Motions to Dismiss must be granted.

### 3.  <u>Defendants' Additional Arguments Raised in their Reply Briefs</u>

In their Reply Briefs, Defendants raised issues concerning retroactive rulemaking,
Plaintiff's standing to sue, and whether Plaintiff should have sought a remedy pursuant to the
Administrative Procedures Act rather than through the lawsuit filed against Defendants.  As
Plaintiff's claim is being dismissed under Rule 12(b)(6), analysis of Defendants' additional
arguments is unnecessary.

### B.  <u>Defendants' Motions for Sanctions Pursuant to Rule 11</u>

The Post Goldtex Defendants move for Rule 11 sanctions against Plaintiff, arguing that
because under the clear language of the FHA, its implementing regulations, case law, and agency
guidance, the Goldtex Apartments are not subject to the FHA's design and construction

accessibility requirements and Plaintiff's claim lacks any legal basis.  (Post Goldtex Defs.' Mem. Supp. Mot. Sanctions 3.)  The Klingstubbins Defendants move for Rule 11 sanctions against Plaintiff for failure to dismiss the Complaint after proper notice from Defendants that Plaintiff had no legal basis to bring the lawsuit.  (Klingstubbins Defs.' Mem. Supp. Mot. Dismiss and for Sanctions 7.)  In light of the above discussion regarding the viability of Plaintiff's claim, Rule 11 sanctions are not appropriate and the Court declines to grant Defendants' Motions for Sanctions.

## IV.    CONCLUSION

In light of the foregoing, Defendants' Motions to Dismiss are granted and Plaintiff's Complaint is dismissed in its entirety.  Defendants' Motions for Sanctions are denied.

An appropriate Order follows.